**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BT WEARABLES LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ZEPP HEALTH CORPORATION,<br><br>　　　　　Defendant. | Civil Action No. 2:25-cv-00318<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BT Wearables LLC ("BT Wearables" or "Plaintiff") files this Complaint against Defendant Zepp Health Corporation ("Zepp" or "Defendant") alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a patent infringement action against Defendant for infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available as provided below.

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1 | 9,204,796 | Personal Emergency Response (PER) System | USPTO.ɢᴏᴠ, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9204796. |
| 2 | 9,775,520 | Wearable Personal Monitoring System | USPTO.ɢᴏᴠ, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9775520. |
| 3 | 10,362,940 | Personal Emergency Response (PER) System | USPTO.ɢᴏᴠ, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10362940. |

|   | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 4 | 10,610,111 | Smart Watch | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10610111 |
| 5 | 10,729,336 | Smart Watch | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10729336. |
| 6 | 11,051,704 | Smart Watch | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11051704. |
| 8 | 12,138,008 | Personal Monitoring Apparatus | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/12138008. |

2.      Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3.      Plaintiff BT Wearables LLC is a limited liability company organized under the laws of the State of Texas, with a registered office located in Austin, Texas (Travis County).

4.      BT Wearables is the owner of the Asserted Patents with all rights to recover for all past, present, and future infringement, including past damages.

5.      Upon information and belief, Zepp is a corporation organized and existing under the laws of China, with its principal place of business at Huami Global Innovation Center, Building B2, Zhing'an Chuanggu Technology Park, No. 900 Wangjiang West Road, Hefei, 230088, People's Republic of China.

6.      Zepp is a leading manufacturer and seller of smartwatches in the world and in the United States.

7.      Upon information and belief, Zepp does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of

infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas.

## JURISDICTION AND VENUE

8.     BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–285, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.     Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and the Texas Long Arm Statute.  Tex. Civ. Prac. & Rem. Code §§ 17.041, *et. seq.*

11.     On information and belief, jurisdiction and venue for this action are proper in this District.

12.     This Court has personal jurisdiction over Defendant because Defendant, directly or through intermediaries, has committed acts within this District giving rise to this action and/or has established minimum contacts with this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.  In particular, each Defendant (i) has a regular and established place of business in the State of Texas and this District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this District; (iii) has done and is doing substantial business in the State of Texas and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including its one or more acts of infringement in the State of Texas and this District; (iv) has derived and derives substantial revenues from infringing acts occurring in the State of Texas and this District; (v) maintains continuous and systematic contacts

in the State of Texas and this District; and/or (vi) places products alleged to be infringing in this Complaint in the stream of commerce with awareness that those products are sold, used, and offered for sale in the State of Texas and this District.

13.    Venue is proper in this Judicial District as to Defendant pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

14.    Defendant is subject to personal jurisdiction in this district at least because it places products alleged to be infringing in this Complaint in the stream of commerce with the awareness and intention that those products are sold, used, and offered for sale in the State of Texas and this District.

15.    Defendant, through its own acts and/or through the acts of its subsidiaries or agents, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one.

## THE ACCUSED PRODUCTS

16.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17.    Based upon public information, Defendant owns, operates, advertises, uses, controls, sells, imports, and/or offers for sale, and instructs its subsidiaries, affiliates, and end users to use, Zepp's smart watch devices and system, including but not limited to, the Amazfit Cheetah, Cheetah Pro, T-Rex, T-Rex 3, T-Rex Ultra, GTR Mini, GTR 2, GTS 2, GTR 3, GTS 3, GTR 4, GTS 4, Bip 5, Bip 5 Unity, Bip Pro, Falcon, Balance, Band 7, Active 2, Active, and Active Edge, and related hardware, software, and functionality that among other features calculates the calories burned by

the user and transmits this data to a remote device; includes a user input device for selecting an exercise; includes an accelerometer and heart rate sensor; executes speech commands from the user; couples to a mobile telephone; and identifies the activity of the user ("<u>Accused Products</u>").

*See, e.g.*, **Figures 1–3**.



**Figure 1**
Source: US.Amazfit.com, https://us.amazfit.com/



**Figure 2**
Source: US.Amazfit.com, https://us.amazfit.com/products/amazfit-gtr-4



**Figure 3**
Source, Amazfit GTR, Internal Photos, FCCID.IO,
https://fccid.io/2AC8UA1910/Internal-Photos/Internal-Photos-4353617

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,204,796

18.     BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

19.     The USPTO issued U.S. Patent No. 9,204,796 ("the '796 patent") on December 18, 2015, after full and fair examination of Application No. 13/952,607 which was filed on July 27, 2013.  *See* '796 patent at 1.

20.     BT Wearables owns all rights, interest, and title in and to the '796 patent, including the sole and exclusive right to prosecute this action and enforce the '796 patent against infringers, and to collect damages for all relevant times.

21.     The claims of the '796 patent are not directed to an abstract idea.  For example, claim 1 of the '796 patent recites a physical device that uses one or more sensors to detect the motion of a mobile object, coupled with a processor and a wireless transceiver that classify sequences of movements by the mobile object into groups of similar postures based on a model and then uses the model to identify the activity of the mobile object.  The claimed inventions of the '796 patent are not limited to well-understood, routine, or conventional activity.  Rather, the subject matter of the claims are inventive, providing an improved biological monitoring device for tracking a user's physical activity and identifying the type of activity using modeling.

22.     The written description of the '796 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

23.     Defendant has directly infringed the '796 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.  For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '796 patent.  For instance, as just one example of infringement,

the Accused Products include one or more sensors to detect movement of a mobile object, a processor and a wireless transceiver to classify sequences of movements of the mobile object into groups of similar postures represented by a model and to apply the model to identify an activity of the mobile object, and the processor furthermore identifies each elemental motion of a sequence of elemental motions of the mobile object, and identifies the activity of the mobile object by matching the sequence of identified elemental motions with one or more stored sequences of elemental motions, wherein each stored sequence of elemental motions corresponds with an activity.

24.    Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '796 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '796 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '796 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '796 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '796 patent.  Defendant's inducement is ongoing.

25.     Defendant has also indirectly infringed by contributing to the infringement of the '796 patent.  Defendant has contributed to the direct infringement of the '796 patent by its personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '796 patent, including, for example, claim 1.   The special features constitute a material part of the invention of one or more of the claims of the '796 patent and are not staple articles of commerce suitable for substantial non-infringing use.   Defendant's contributory infringement is ongoing.

26.     BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '796 patent.

27.     Defendant has had knowledge of the '796 patent at least as of the date when it was notified of the filing of this action.

28.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables patent rights.

29.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

30.     Defendant's direct and indirect infringement of the '796 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

31.     BT Wearables has been damaged as a result of the infringing conduct by Defendant alleged above.   Thus, Defendant is liable to BT Wearables in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

32.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Defendant's infringement of the '796 patent.  Defendant's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,775,520

33.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

34.    The USPTO issued U.S. Patent No. 9,775,520 ("the '520 patent") on October 3, 2017, after full and fair examination of Application No. 14/931,002, filed on November 3, 2015.  *See* '520 patent at 1.

35.    BT Wearables owns all rights, interest, and title in and to the '520 patent, including the sole and exclusive right to prosecute this action and enforce the '520 patent against infringers, and to collect damages for all relevant times.

36.    The claims of the '520 patent are not directed to an abstract idea.  For example, claim 1 of the '520 patent recites a physical device worn on the wrist with an accelerometer, processor, and wireless transceiver, and using signals from the accelerometer, uses the processor to analyze whether those signals indicate a pre-determined exercise and calculates the calories burned by the user and transmits this data to a remote device.  The claimed inventions of the '520 patent are not

limited to well-understood, routine, or conventional activity. Rather, the subject matter of the claims are inventive, providing an improved biological monitoring device that tracks of a user's physical activity and the type of exercise of the user to calculate calories burned by the user.

37.    The written description of the '520 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.    Defendant has directly infringed the '520 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers. For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '520 patent. For instance, as just one example of infringement, the Accused Products comprise a housing adapted to be worn on a wrist, including an accelerometer, a radio frequency transceiver and a processor that analyzes signals from the accelerometer to determine whether the signals are indicative of predefined exercise and computes calories burned by the person based on the signals from the accelerometer and the predefined exercise and transmits the calories burned to a remote device via the transceiver.

39.    Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '520 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '520 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the

specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '520 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '520 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '520 patent. Defendant's inducement is ongoing.

40.     Defendant has also indirectly infringed by contributing to the infringement of the '520 patent. Defendant has contributed to the direct infringement of the '520 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '520 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '520 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

41.     BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '520 patent.

42.     Defendant has had knowledge of the '520 patent at least as of the date when they were notified of the filing of this action.

43.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of BT Wearables' patent rights.

44.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

45.    Defendant's direct and indirect infringement of the '520 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

46.    BT Wearables has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Defendant's infringement of the '520 patent.  Defendant's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,362,940

48.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

49.     The USPTO issued U.S. Patent No. 10,362,940 ("the '940 patent") on July 30, 2019, after full and fair examination of Application No. 15/684,670, filed on August 23, 2017. *See* '940 patent at 1.

50.     BT Wearables owns all rights, interest, and title in and to the '940 patent, including the sole and exclusive right to prosecute this action and enforce the '940 patent against infringers, and to collect damages for all relevant times.

51.     The claims of the '940 patent are not directed to an abstract idea. For example, claim 1 of the '940 patent recites physical monitoring device for worn on a wrist comprising a housing and including a processor, accelerometer, and user input device, where the user input device is adapted to select a predefined exercise and the processor computes activity data based on signals from the accelerometer. The claimed inventions of the '940 patent are not limited to well-understood, routine, or conventional activity. Rather, the subject matter of the claims are inventive, providing an improved biological monitoring device for tracking a user's physical activity and identifying activity data related to a specific type of exercise.

52.     The written description of the '940 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

53.     Defendant has directly infringed the '940 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers. For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '940 patent. For instance, as just one example of infringement,

the Accused Products comprise a housing adapted to be worn on a wrist with an accelerometer, processor, and user input device disposed in the housing, where the user input device is adapted for selecting a predefined exercise and the processor computes activity data for the selected predefined exercise based on signals from the accelerometer.

54.    Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '940 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '940 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '940 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '940 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '940 patent.  Defendant's inducement is ongoing.

55.    Defendant has also indirectly infringed by contributing to the infringement of the '940 patent.  Defendant has contributed to the direct infringement of the '940 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that

infringe one or more claims of the '940 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '940 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

56.     BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '940 patent.

57.     Defendant has had knowledge of the '940 patent at least as of the date when it was notified of the filing of this action.

58.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

59.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

60.     Defendant direct and indirect infringement of the '940 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

61.     BT Wearables has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

62.     BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. BT Wearables has and will continue to

suffer this harm by virtue of Defendant's infringement of the '940 patent.  Defendant's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,610,111

63.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

64.    The USPTO issued U.S. Patent No. 10,610,111 ("the '111 patent") on April 7, 2020, after full and fair examination of Application No. 15/626,014, filed on June 16, 2017.  *See* '111 patent at 1.

65.    BT Wearables owns all rights, interest, and title in and to the '111 patent, including the sole and exclusive right to prosecute this action and enforce the '111 patent against infringers, and to collect damages for all relevant times.

66.    The claims of the '111 patent are not directed to an abstract idea.  For example, claim 12 of the '111 patent recites a physical wristwatch device comprising WiFi and Bluetooth transceivers and an accelerometer or motion sensor coupled to a processor with an ECG sensor coupled to a back of the wearable device, wherein the processor executes a speech command.  The claimed inventions of the '111 patent are not limited to well-understood, routine, or conventional activity.  Rather, the subject matter of the claims are inventive an improved biological monitoring device for physiological monitoring and integrated wearable system capable of short range wireless communication, motion detection, heart monitoring via ECG, and voice command execution.

67.    The written description of the '111 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.    Defendant has directly infringed the '111 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.  For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '111 patent.  For instance, as just one example of infringement, the Accused Products include a mobile system, comprising a wearable device having a wrist-watch housing configured to be coupled to a wrist; WiFi and Bluetooth transceivers coupled to a processor; an accelerometer or a motion sensor coupled to the processor; and an ECG sensor coupled to a back of the wearable device and  wherein the processor executes a speech command.

69.    Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '111 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '111 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the devices in a manner that infringes one or more claims of the '111 patent, including, for example, claim 12.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the devices in an infringing manner; advertising and promoting the use of the devices in an infringing manner; or distributing

instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '111 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the devices by others would infringe the '111 patent. Defendant's inducement is ongoing.

70.    Defendant has also indirectly infringed by contributing to the infringement of the '111 patent.  Defendant has contributed to the direct infringement of the '111 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '111 patent, including, for example, claim 12.  The special features constitute a material part of the invention of one or more of the claims of the '111 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

71.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '111 patent.

72.    Defendant has had knowledge of the '111 patent at least as of the date when it was notified of the filing of this action.

73.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

74.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

75.    Defendant's direct and indirect infringement of the '111 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

76.    BT Wearables has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

77.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Defendant's infringement of the '111 patent.  Defendant's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,729,336

78.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

79.    The USPTO issued U.S. Patent No. 10,729,336 ("the '336 patent") on August 4, 2020, after full and fair examination of Application No. 15/626,022, filed on June 16, 2017.  *See* '336 patent at 1.

80.    BT Wearables owns all rights, interest, and title in and to the '336 patent, including the sole and exclusive right to prosecute this action and enforce the '336 patent against infringers, and to collect damages for all relevant times.

81.    The claims of the '336 patent are not directed to an abstract idea.  For example, claim 1 of the '336 patent recites a wrist-watch that tracks at least one body parameter and includes a processor, a transceiver, an accelerometer, at least one heart monitoring sensors for detecting a vital sign, a telephone with a positioning system wirelessly coupled to the wearable appliance and that is capable of off-loading at least a portion of the speech-processing from the wearable appliance, and a remote server wirelessly coupled to the wearable appliance through the transceiver or telephone.  The claimed inventions of the '336 patent are not limited to well-understood, routine, or conventional activity.  Rather, the subject matter of the claims are inventive, providing an improved biological monitoring device for tracking a user's vital signs, movements, and activity using a wrist-watch that has partial speech processing capabilities.

82.    The written description of the '336 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83.    Defendant has directly infringed the '336 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.  For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1 of the '336 patent.  For instance, as just one example of infringement, the Accused Products are an appliance that monitors one or more body parameters, the appliance including a wrist-watch housing, a processor, a transceiver, an accelerometer and one or more heart monitoring sensors coupled to a back of the wrist-watch housing configured to be coupled to a wrist to detect a vital sign, where the accelerometer detects user movement, and one or more

additional sensors that detect body activity, and which further include a telephone with a positioning system wirelessly coupled to the wearable appliance where the telephone offloads at least a portion of speech processing from the processor of the wearable appliance and a remote-server wirelessly coupled through the transceiver or the telephone.  .

84.     Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '336 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '336 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the devices in a manner that infringes one or more claims of the '336 patent, including, for example, claims 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the devices in an infringing manner; advertising and promoting the use of the devices in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '336 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the devices by others would infringe the '336 patent. Defendant's inducement is ongoing.

85.     Defendant has also indirectly infringed by contributing to the infringement of the '336 patent.  Defendant has contributed to the direct infringement of the '336 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that

infringe one or more claims of the '336 patent, including, for example, claims 1. The special features constitute a material part of the invention of one or more of the claims of the '336 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

86.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '336 patent.

87.    Defendant has had knowledge of the '336 patent at least as of the date when it was notified of the filing of this action.

88.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

89.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

90.    Defendant's direct and indirect infringement of the '336 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

91.    BT Wearables has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

92.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. BT Wearables has and will continue to

suffer this harm by virtue of Defendant's infringement of the '336 patent.  Defendant's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 11,051,704

93.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

94.    The USPTO issued U.S. Patent No. 11,051,704 ("the '704 patent") on July 6, 2021, after full and fair examination of Application No. 15/625,483, filed on June 16, 2017.  *See* '704 patent at 1.

95.    BT Wearables owns all rights, interest, and title in and to the '704 patent, including the sole and exclusive right to prosecute this action and enforce the '704 patent against infringers, and to collect damages for all relevant times.

96.    The claims of the '704 patent are not directed to an abstract idea.  For example, claim 1 of the '704 patent recites wrist-watch that tracks at least one body parameter and includes a processor, a transceiver, an accelerometer, at least one heart monitoring sensor to detect a vital sign, and a processor capable of detecting a heart problem, further comprising a telephone with a positioning system and that is capable of performing speech processing on speech captured by the wrist-watch and further coupled to a remote server through the transceiver or telephone.  The claimed inventions of the '704 patent are not limited to well-understood, routine, or conventional activity.  Rather, the subject matter of the claims are inventive, providing an improved biological

monitoring device with speech capturing and processing capabilities for tracking a user's vital signs and detecting a heart problem.

97.    The written description of the '704 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

98.    Defendant has directly infringed the '704 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.  For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '704 patent.  For instance, as just one example of infringement, the Accused Products are a wearable appliance, the appliance including a wrist-watch housing, a processor, a transceiver, an accelerometer and one or more heart monitoring sensors configured for vital sign detection, where the processor is capable of detecting a heart problem, and further including a telephone that has a positioning system wirelessly coupled to the wearable appliance, the telephone performing speech processing and the processor of the wearable appliance capturing speech, and a remote-server wirelessly coupled to the wearable appliance through the transceiver or the telephone.

99.    Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '704 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '704 patent by providing or requiring use of the Accused Products.

Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '704 patent, including, for example, claims 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '704 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the devices by others would infringe the '704 patent.  Defendant's inducement is ongoing.

100.    Defendant has also indirectly infringed by contributing to the infringement of the '704 patent.  Defendant has contributed to the direct infringement of the '704 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '704 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '704 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

101.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '704 patent.

102.    Defendant has had knowledge of the '704 patent at least as of the date when it was notified of the filing of this action.

103.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

104.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

105.    Defendant's direct and indirect infringement of the '704 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

106.    BT Wearables has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

107.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Defendant's infringement of the '704 patent.  Defendant's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO 12,138,008

108.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

109.    The USPTO issued U.S. Patent No. 12,138,008 ("the '008 patent") on November 12, 2024, after full and fair examination of Application No. 18/534,450, filed on December 8, 2023. *See* '008 patent at 1.

110.    BT Wearables owns all rights, interest, and title in and to the '008 patent, including the sole and exclusive right to prosecute this action and enforce the '008 patent against infringers, and to collect damages for all relevant times.

111.    The claims of the '008 patent are not directed to an abstract idea.  For example, claim 1 of the '008 patent recites a system comprising a wearable monitoring apparatus worn on the wrist that includes a heart rate sensor, a processor, a Bluetooth® wireless transceiver, and a second wireless transceiver using a different communication protocol, as well as a mobile device that wirelessly communicates with the wearable apparatus via Bluetooth® and displays heart rate data from the wearable.  The claimed inventions of the '008 patent are not limited to well-understood, routine, or conventional activity.  Rather, the subject matter of the claims are inventive, providing an improved biological monitoring device for heart rate in conjunction with a mobile device that displays data from the wearable device.

112.    The written description of the '008 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

113.    Defendant has directly infringed the '008 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.  For example, Defendant has directly infringed, either literally or under the doctrine of

equivalents, at least claim 1 of the '008 patent.  For instance, as just one example of infringement, the Accused Products are a wearable monitoring apparatus worn on the wrist that includes a heart rate sensor, a processor, a Bluetooth® wireless transceiver, and a second wireless transceiver using a different communication protocol, as well as a mobile device that wirelessly communicates with the wearable apparatus via Bluetooth® and displays heart rate data from the wearable.

114.    Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '008 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '008 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '008 patent, including, for example, claims 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '008 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the devices by others would infringe the '008 patent.  Defendant's inducement is ongoing.

115.    Defendant has also indirectly infringed by contributing to the infringement of the '008 patent.  Defendant has contributed to the direct infringement of the '008 patent by its personnel, contractors, and customers.   The Accused Products have special features that are specially

designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '008 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '008 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

116.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '008 patent.

117.    Defendant has had knowledge of the '008 patent at least as of the date when it was notified of the filing of this action.

118.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

119.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

120.    Defendant's direct and indirect infringement of the '008 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

121.    BT Wearables has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

122.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Defendant's infringement of the '008 patent.  Defendant's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

123.    Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

124.    WHEREFORE, BT Wearables requests that the Court find in its favor and against Defendant, and that the Court grant BT Wearables the following relief:

a.    Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the Asserted Patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.    Judgment that Defendant account for and pay to BT Wearables all damages to and costs incurred by BT Wearables because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award BT Wearables its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>March 31, 2025</u>        Respectfully submitted,

By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854)
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305, (202) 316-1591
Email: matt@rhmtrial.com

Jonathan Hardt (TX 24039906)
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**Attorneys for Plaintiff *BT WEARABLES LLC***

## List Of Supportive Links

A. U.S. Patent No. 9,204,796, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9204796.

B. U.S. Patent No. 9,775,520, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9775520.

C. U.S. Patent No. 10,362,940, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10362940.

D. U.S. Patent No. 10,610,111, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10610111.

E. U.S. Patent No. 10,729,336, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10729336.

F. U.S. Patent No. 11,051,704, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11051704.

G.  U.S. Patent No. 12,138,008, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/12138008.